**UTAH MEDICAL PRODUCTS, INC.,**
a Utah corporation, Plaintiff
and Appellant,

v.

Joanne SEARCY, an individual; Clinical Innovations, Inc., a Utah corporation; and Does 1 through 10, Defendant and Appellees.

No. 960544.

Supreme Court of Utah.

April 24, 1998.

Richard D. Burbidge, Stephen B. Mitchell, Salt Lake City, for Utah Medical Products, Cecil R. Hedger, Franklin N. Smith, Salt Lake City, for Searcy.

Raymond J. Etcheverry, J. Preston Stieff, David K. Isom, H. Dickson Burton, Edgar R. Cataxinos, Salt Lake City, for Clinical Innovations.

RUSSON, Justice:

This court granted the petition of Utah Medical Products, Inc., for an interlocutory appeal from the district court's denial of a preliminary injunction. The district court originally granted a temporary restraining order against Joanne Searcy and Clinical Innovations, Inc. However, after a hearing on the matter, the district court denied the motion for a preliminary injunction. We affirm.

## BACKGROUND

Utah Medical Products, Inc. (Utah Medical), a corporation that develops, markets, and sells medical devices, hired Joanne Searcy to be a "Contract Technology Specialist" on January 30, 1995. Her responsibilities included monitoring contract bids, new contracts, existing contracts and contract compliance; interacting with parties regarding terms and conditions of the contract; and reporting on contract and sales staff performance. As part of the terms of her employment, she signed a confidentiality agreement in which she agreed not to disclose any confidential proprietary information. The agreement also prohibited Searcy, for a period of one year after her termination, from soliciting, inducing, or attempting to induce any of Utah Medical's customers to do business with any of the company's direct competitors. Utah Medical terminated her employment on January 30, 1996.

Subsequently, Clinical Innovations, Inc. (CII), a competitor of Utah Medical's and co-defendant in this action, expressed some interest in hiring Searcy but was concerned about her confidentiality agreement with Utah Medical that was still in effect. Searcy contacted Utah Medical and requested that she be released from her obligations under the agreement, but Utah Medical declined to release her. CII did not hire Searcy. Although Utah Medical claims that she was not hired because of the confidentiality agreement, CII maintains that she was not hired because a full-time position was not available. Later, in the summer of 1996, Searcy contacted CII and inquired about possible part-time employment. CII hired her for part-time work on August 5, 1996, to create a computer database and to provide clerical assistance.

During this time, Utah Medical had been selling an intrauterine pressure catheter ("IUPC") called "Intran" to Columbia Hospital Corporation (Columbia) pursuant to a two-year contract which was to expire on October 31, 1996. Columbia, an operator of a large number of hospitals, was one of Utah Medical's most significant customers. However, as the contract neared expiration in October of 1996, Columbia solicited bids for a new IUPC contract. CII set out to submit a bid to sell its own IUPC, the "Koala," to Columbia.

Searcy's supervisor at CII, Jeffery Bradford, asked Searcy to call Columbia and find out how to submit a bid for the contract. Upon telephoning Columbia, she was told to contact Scott Minniear at MetaCon, an entity Columbia designated to review and screen new products and, if appropriate, present them to Columbia for consideration. After relaying this information, Searcy informed Bradford, who was aware of the confidentiality agreement, that she had met Minniear while she was employed at Utah Medical.

Searcy assisted in assembling a promotional package to be sent to Minniear at MetaCon. She then called Minniear and scheduled a meeting where he could visit CII and learn more about the Koala. Searcy attended that meeting and helped explain the informational materials. After the meeting, Bradford told Minniear that in the future, if he could not reach Bradford directly, he should contact Searcy.

After CII's presentation, Minniear informed them that he would recommend the

Koala to Columbia and that the next step was for CII to make similar presentations before various Columbia hospitals. In preparation for these presentations, Bradford told Searcy to get the contact names for the hospitals where these evaluations were to take place. As part of this preparation, Minniear faxed a request to Searcy for more information on the Koala. Minniear mistakenly sent the request to Searcy's attention at Utah Medical instead of CII.

Upon receiving the fax, Utah Medical commenced this action, seeking to enjoin both Searcy and CII from (1) using any confidential information about Utah Medical's products, (2) soliciting, inducing, or attempting to induce any Utah Medical customers with whom Searcy had contact while at CII to do business with anyone other than Utah Medical, and (3) attempting to market or sell products in competition with Utah Medical.

The trial court originally granted a temporary restraining order against Searcy and CII. However, after a hearing, the trial court denied Utah Medical's motion for a preliminary injunction. The court denied the injunction on numerous grounds. It found that Utah Medical failed to show a substantial likelihood that it could prove at trial that Searcy's employment at CII violated the agreement or that Searcy's employment at CII created an unfair competitive advantage to CII. The trial court also found that Searcy's involvement with marketing at CII was merely clerical or administrative and that Utah Medical failed to show a substantial likelihood that it could prove at trial that Searcy represented or in any way used Utah Medical's good will to CII's advantage. Furthermore, it found that the requested preliminary injunction would be adverse to the public interest since it would remove a valuable medical device, the Koala, from certain markets.

On interlocutory appeal, Utah Medical argues that the trial court erred in not granting the preliminary injunction because the agreement was enforceable against both CII and Searcy and the evidence demonstrated a violation of the confidentiality agreement. It also argues that the trial court erred in not considering the alternative element for preliminary injunctions provided in rule 65A(e)(4) of the Utah Rules of Civil Procedure, which allows a preliminary injunction to be issued if other elements are present and "the case presents serious issues on the merits which should be the subject of further litigation." Utah Medical also claims that the trial court erred in requiring it to show that Searcy's services were unique and that CII thereby gained an unfair advantage.

In response, CII and Searcy assert the following arguments:[1] First, Utah Medical's claim that the trial court erred in not finding a violation of the agreement amounts to a challenge of the court's findings of fact. As the challenger, Utah Medical has the burden of marshaling the evidence. Utah Medical did not marshal the evidence, and therefore, this court must assume that the evidence supports the trial court's findings and ruling. Second, the trial court was correct in denying the injunction because (1) confidentiality agreements drafted by the employer are to be construed narrowly, (2) Utah Medical failed to show irreparable harm, and (3) one can infer from the court's failure to specifically cite the alternative element under rule 65A(e)(4) that the court found that element lacking. Third, Utah Medical failed to raise the alternative element issue below, and therefore, the issue is not properly before this court. Finally, Searcy individually argues that she and CII are entitled to attorney fees because Utah Medical's appeal was frivolous or, alternatively, that Searcy is entitled to attorney fees pursuant to the confidentiality agreement.

Thus, there are three issues before this court: (1) whether Utah Medical has adequately challenged the trial court's findings of fact relating to the alleged breach of the confidentiality agreement, (2) whether the trial court committed reversible error in not applying the alternative element of rule 65A(e)(4), and (3) whether Searcy or CII is entitled to attorney fees.

---

1. Although Searcy and CII filed separate briefs, Searcy explicitly adopted CII's brief. Therefore, with the exception of Searcy's additional claim for attorney fees, Searcy's and CII's arguments are identical and will not be treated separately.

## STANDARD OF REVIEW

■ Utah Rule of Civil Procedure 52(a) states:

[I]n granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact ... [which] *shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.*

Utah R.Civ.P. 52(a) (emphasis added). Therefore, this court will reverse the trial court's findings of fact concerning the alleged violation of the agreement only if they are "clearly erroneous" as demonstrated by the challenger's marshaling of the evidence. *Valcarce v. Fitzgerald,* 331 Utah Adv.Rep. 68, 70 (December 5, 1997) (citing *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989)). The application of rule 65A(e)(4) is a question of law which we review for correctness. *State v. One Hundred Seventy-Five Thousand Eight Hundred Dollars, United States Currency,* 942 P.2d 343, 346 (Utah 1997).

## ANALYSIS

■ The first issue we must decide is whether Utah Medical has adequately challenged the trial court's findings of fact regarding the alleged breach of the confidentiality agreement. In addressing this issue, we initially set forth the standards for issuing a preliminary injunction and the trial court's factual findings. The Utah Rules of Civil Procedure specifically provide that a restraining order or preliminary injunction may issue only upon a showing by the applicant that:

(1) The applicant will suffer irreparable harm unless the order or injunction issues;

(2) The threatened injury to the applicant outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined;

(3) The order or injunction, if issued, would not be adverse to the public interest; *and*

(4) There is a substantial likelihood that the applicant will prevail on the merits of the underlying claim, *or* the case presents serious issues on the merits which should be the subject of further litigation.

Utah R.Civ.P. 65A(e) (emphasis added). Thus, the party seeking the preliminary injunction must meet all four elements of rule 65A for an injunction to issue.[2]

The trial court denied Utah Medical's motion for preliminary injunction, finding that it did not meet all of the required elements. In denying the motion, the trial court entered the following findings:

1. Plaintiff allowed defendant Joanne Searcy to be employed by a competitor and only restricted her from soliciting, inducing and attempting to induce customers of Utah Medical and certain others and from divulging confidential information.

2. Plaintiff failed to show a substantial likelihood that it could show at trial that Searcy has solicited, induced or attempted to induce customers within the meaning of her agreement with plaintiff.

3. Plaintiff failed to show a substantial likelihood that it could show at trial that Searcy's employment at [CII] has created, either directly or indirectly, an unfair competitive advantage in favor of [CII].

4. Searcy's involvement in marketing at [CII] is minimal and is clerical or administrative.

5. Plaintiff failed to show a substantial likelihood that it would prevail in its efforts at trial to show that Searcy has divulged any confidential information of plaintiff.

6. Plaintiff failed to show a substantial likelihood that it could demonstrate at trial that Searcy either represented the good will of Utah Medical or used any good will in any way advantageous to [CII].

---

2. The advisory committee note to paragraph (e) of rule 65A states:

The standards set forth in paragraph (e) are derived from *Tri–State Generation & Transmission Ass'n. v. Shoshone River Power Inc.,* 805 F.2d 351, 355 (10th Cir.1986) and *Otero Savings & Loan Ass'n. v. Federal Reserve Bank,* 665 F.2d 275, 278 (10th Cir.1981). Federal Courts require proof of compliance with each of the four standards....

Utah R.Civ.P. 65A(e), advisory committee's note.

7. Because the proposed preliminary injunction may eliminate a valuable medical device from certain markets, the proposed injunction would be adverse to the public interest.

8. Plaintiff's Motion for Preliminary Injunction is therefore denied.

Findings 2 through 6 directly address the first requirement of the fourth element, i.e., whether there is a substantial likelihood that Utah Medical will prevail on the merits of the underlying claim. They also address the second element, i.e., whether the threatened injury to Utah Medical outweighs the damage the injunction may cause CII, and to a lesser degree, the first element, i.e., whether irreparable harm will result. Finding 7 squarely addresses the third element— whether the injunction would be against the public interest.

■ Utah Medical argues that the trial court erred in failing to specifically address whether Utah Medical met the alternative requirement of the fourth element. It argues that rule 65A(e)(4) of the Utah Rules of Civil Procedure provides that an injunction may also be issued when "the case presents serious merits which should be the subject of further litigation." However, this is not the case. Rule 65A(e) clearly requires that all four elements be met. The alternative requirement cited by Utah Medical is only one of four essential elements of a preliminary injunction. If Utah Medical has not successfully attacked the trial court's findings of fact with respect to the other elements, an examination of whether the fourth element was properly considered is unnecessary. Therefore, before we address whether the trial court considered the alternative requirement found in rule 65A(e)(4) and, if not, whether it erred in not doing so, we first determine whether Utah Medical is successful in its challenge of the findings that address the other three essential elements of rule 65A.

To successfully argue that the trial court erred in denying the preliminary injunction, Utah Medical must successfully challenge all of the findings regarding Utah Medical's inability to meet the essential elements. In other words, Utah Medical must show that the clear weight of the evidence supports a finding that it has met *all* the elements of a preliminary injunction.

■ This court has clearly stated the burden of one who challenges a trial court's findings of fact as follows:

To successfully challenge a trial court's findings of fact on appeal, "[a]n appellant must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'"

*Valcarce,* 331 Utah Adv.Rep. at 70 (citations omitted); *see also Alta Pacific Assocs. v. State Tax Comm'n,* 931 P.2d 103, 110 (Utah 1997). After marshaling all the evidence in support of the trial court's ruling, an appellant must demonstrate that even in the light most favorable to the trial court, the evidence was insufficient to support the findings. *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899 (Utah 1989). We apply this deferential standard to trial courts because of their advantaged position to evaluate the evidence and determine the facts. *Willey v. Willey,* 951 P.2d 226, 230 (Utah 1997); *see also* Utah R.Civ.P. 52(a). If the challenger fails to meet this burden, its claim must fail. *See Valcarce,* 331 Utah Adv.Rep. at 70; *see also Hales Sand & Gravel v. Audit Div.,* 842 P.2d 887, 893 (Utah 1992) (affirming tax commission's findings because challenger failed to marshal evidence). Thus, the success of Utah Medical's current appeal depends on whether it has marshaled all the evidence in support of the trial court's findings that Utah Medical did not meet the necessary elements of a preliminary injunction, and has then shown that despite such evidence, the trial court's findings were clearly erroneous.

■ Utah Medical has simply failed to meet this burden. It did not marshal all the evidence supporting the trial court's findings or show that, viewing the evidence in a light favorable to the court's rulings, the findings were clearly erroneous. Rather, Utah Medical merely stated those facts favorable to its position or stated that there was no evidence whatsoever to support the trial court's findings. However, CII set forth the following

evidence, unmarshaled by Utah Medical, which supports trial court findings 1, 2, 4, and 6:

(1) CII president testified that Searcy did not participate in soliciting, marketing, or pitching the product to Columbia.

(2) Utah Medical vice president testified that MetaCon was not one of Utah Medical's clients.

(3) Minniear testified that he did not make any substantive inquiries of Searcy because he did not believe that Searcy had that information.

(4) CII president and Searcy both testified that her primary duties at Utah Medical were to create a database, not to interact with customers.

(5) Searcy testified that her participation in the presentation of the Koala to MetaCon was limited to explaining the organization of the presentation binder.

(6) Minniear testified that the fax addressed to Searcy and mistakenly sent to Utah Medical was designed and composed for CII's president, not for Searcy.

(7) Minniear testified that the fax was sent to Searcy's attention only so that she would deliver the fax to CII executives.

Because Utah Medical failed to marshal the evidence, we must assume that the evidence supported the enumerated findings.

██ Furthermore, the trial court's finding 7, which indicates that Utah Medical failed to meet the third element, was not adequately challenged.[3] As with the findings that address the first, second, and fourth elements of a preliminary injunction, Utah Medical failed to marshal the evidence and show that

in spite of that evidence, the trial court's finding that an injunction would be against the public interest was clearly erroneous. In light of Utah Medical's failure to marshal the evidence, we must assume that all the trial court's findings are supported by the evidence. Because the trial court's findings support the denial of a preliminary injunction, we affirm the trial court's ruling.

Since we find that the trial court's findings regarding the first three elements are supported by the evidence and because rule 65A(e) of the Utah Rules of Civil Procedure requires that all four elements be present, we do not address Utah Medical's claim of error that the trial court failed to consider the alternative element of rule 65A(e)(4). Such error, if any, would be harmless inasmuch as the trial court's ruling regarding the other three elements precludes a preliminary injunction. Therefore, whether Utah Medical met the alternative requirement of rule 65A(e)(4) is immaterial.

Similarly, we decline to address the argument that Utah Medical was not required to show that Searcy's services at CII were unique and that CII thereby gained an unfair competitive advantage. Even without the findings that Utah Medical claims erroneously require Utah Medical to show unfair competitive advantage and that Searcy's services were unique, the remaining findings sufficiently support the trial court's denial of the preliminary injunction.

██ The only remaining issue is Searcy's request for attorney fees. However, the issue of attorney fees is not properly before this court because it was raised for the first time on appeal. We do not address issues raised for the first time on appeal unless

---

3. Finding 7 addressed the third essential element (rule 65A(e)(3)) of a preliminary injunction, which calls for a determination of whether the injunction would be adverse to the public interest. The trial court stated, "Because the proposed preliminary injunction may eliminate a valuable medical device from certain markets, the proposed injunction would be adverse to the public interest." Utah Medical argued that "there is not one shred of evidence to support this finding." However, there was evidence upon which the trial court may have relied to make such a finding. Searcy testified that during CII's presentation of the Koala to MetaCon,

CII's representative outlined the "feature benefits" of the Koala, which included a smaller tip than Intran's and a transducer in a different location than in Intran's. Also, there was evidence of the large part of the hospital market that Columbia occupies. And, if enjoined, the Koala would not be available to these hospitals, which could be against the public interest. Therefore, we can infer with the appropriate deference that the court's finding was supported by the evidence. More importantly, the existence of this evidence is another indication that Utah Medical did not marshal the evidence.

specific grounds for doing so are presented to this court. *Strawberry Elec. Serv. Dist. v. Spanish Fork City*, 918 P.2d 870, 880 (Utah 1996) (stating that with few limited exceptions, this court will not consider issues raised for first time on appeal); *see* Utah R.App.P. 5.[4] None of the parties to this appeal properly raised the issue of attorney fees. Therefore, we decline to address this issue.

## CONCLUSION

We affirm the trial court's denial of the preliminary injunction because Utah Medical failed to marshal the evidence supporting the trial court's ruling and thus failed to show that the findings were "against the clear weight of the evidence."

HOWE, C.J., DURHAM, Associate C.J., and ZIMMERMAN, J., concur in Justice RUSSON's opinion.

STEWART, J., having disqualified himself, does not participate herein.

---

4. Rule 5(c) of the Utah Rules of Appellate Procedure, which governs appeals from interlocutory orders, requires a demonstration that the issues presented on appeal were preserved in the trial court. Likewise, rule 24(a)(5), which governs briefs submitted on appeal, requires the following:

A statement of the issues presented for review, including for each issue: . . .
(A) *citation to the record* showing that the issue was preserved in the trial court; or
(B) *a statement of grounds for seeking review on an issue not preserved in the trial court.*
Utah R.App.P. 24(a)(e) (emphasis added).